IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIANA ROSA, | ) | CASE NO. 1:11CV0849 |
| | ) | |
| Petitioner, | ) | JUDGE POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| LASHANN EPPINGER, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is the petition of Diana Rosa ("Rosa") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on November 1, 2010. Rosa is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Rosa*, Case No. CR 517590 (Cuyahoga County 2009). For the reasons set forth below, the court should dismiss Rosa's petition.

I.

The state appellate court reviewing Rosa's conviction during her direct appeal found the following facts to be relevant to her case:

{¶ 2} During the summer of 2008, appellant and her husband, Alfredo Rosa, began a sexual relationship with a then 15-year-old family friend, "K.G." FN1 The

Rosa family and K.G.'s family had become acquainted while attending the same church. K.G.'s mother ("Mother") assisted with the youth church, where appellant and Alfredo also volunteered. K.G. had spent time playing at appellant's house with Alfredo's niece and would often go there to get away from the burdens of helping to raise two younger half-siblings. In the summer of 2008, after the death of K.G.'s grandmother, she began spending more time at the Rosa household. She often stayed overnight on the weekends, playing with the Rosas' children and spending time talking with appellant and Alfredo.

FN1. Pursuant to this court's established policy, the identity of the victim is shielded; therefore, she and her family members are referred to only by their initials.

{¶ 3} K.G. testified that early in August 2008, she told Alfredo that she had a "crush" on him. After a few days, Alfredo and K.G. engaged in sexual activity on two occasions. After these two incidents, K.G., Alfredo, and appellant were seated at the kitchen table at the Rosa house when they began discussing K.G.'s feelings for Alfredo. The three often communicated by writing in a notebook and passing it between themselves. K.G. testified that appellant handed her a list of questions asking her if she would like to have a sexual relationship with Alfredo and appellant. This list, entitled "Random ?'s" was then orally discussed between the three. K.G. circled or placed a check mark next to questions she would agree to discuss with the other two. K.G. testified that by the end of the discussion, she had agreed to engage in a sexual relationship with Alfredo and appellant.

{¶ 4} The following weekend, K.G. spent the night at the Rosas' house. K.G., appellant, and Alfredo engaged in sexual activities in the couple's bedroom. Appellant engaged in various sexual acts with K.G. as well as observed Alfredo engage in various sexual acts with K.G. K.G. also observed appellant engage in sexual acts with Alfredo.

{¶ 5} On September 26, 2008, the trio engaged in another sexual encounter in the living room of the Rosas' home. On this occasion, appellant observed various sexual acts being performed on K.G. by Alfredo, and K.G. observed sexual acts being performed on appellant by Alfredo.

{¶ 6} K.G. had kept the list of questions appellant had presented to her entitled "Random ?'s" as well as other notes between the trio. K.G. testified that she usually kept them in a box in her closet, but on the morning of October 3, 2008, she had forgotten them on the counter in the bathroom. K.G.'s mother discovered these notes. K.G. testified that, upon realizing that the notes were missing, she called her mother and verified that she had the notes, then she called appellant and Alfredo to advise them the notes had been found. Alfredo instructed K.G. to minimize any relationship they had and say it was only "kissing and touching."

{¶ 7} K.G.'s mother testified that she took the notes to work and read them.

Although the notes did not contain any names or descriptions of the activities the three had engaged in, they were enough to deeply disturb Mother. She was unable to finish work and called her ex-boyfriend to pick her up. Mother, along with her husband, her ex-boyfriend, and K.G. went to appellant's home to confront her and Alfredo about the notes. The two were not at home, and the group left to return later that day.

{¶ 8} When the group returned, they discussed the notes with appellant and Alfredo on the front lawn of the Rosas' home so that appellant's children would not hear. K.G.'s mother and her husband both testified that, upon confrontation, Alfredo was apologetic and stated there had only been "kissing and touching" and that appellant stated "they had agreed to wait until [K.G.] was 18 before they had sex with her." K.G. corroborated this statement at the time. Mother testified that the group parted amicably, but that she still had questions. A few days later, she called the police and made a report.

{¶ 9} Detective Pamela Berg of the Cleveland Police Sex Crimes and Child Abuse Unit testified that she followed up with K.G. and her mother. Det. Berg testified that she took a statement from K.G. that detailed various sexual activities that took place between K.G., appellant, and Alfredo. Prior to giving this written statement, K.G. had only stated there had been some "kissing and touching."

{¶ 10} Appellant and Alfredo were indicted on November 7, 2008 and charged with 12 counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), with only six counts applicable to appellant. Trial began on March 24, 2009 and resulted in a guilty verdict on all charges. Appellant was sentenced to three years incarceration on two counts, to be served consecutive to each other but concurrent to four two-year sentences on the remaining charges. Appellant was also classified as a Tier II sex offender.

*State v. Rosa*, 2010 WL 2007199, at *1-*2 (Ohio App. May 20, 2010).

Rosa timely appealed her conviction and sentence. Rosa raised four assignments of error in her first direct appeal:

First Assignment of Error:

The trial court erred by overruling a defense motion to dismiss a prospective juror for cause where the totality of the questioning revealed a strong bias against the appellant.

Second Assignment of Error:

The failure to object to improper testimony thus allowing the jury to consider unfairly

3

prejudicial evidence deprived the appellant her right to effective assistance of counsel.

Third Assignment of Error:

The convictions of R.C. §2907.04(A), Unlawful Sexual Conduct with a Minor, are against the weight of the evidence.

Fourth Assignment of Error:

The trial court erred by sentencing the appellant to serve consecutive sentences without providing the proper findings as required by R.C. §2929.14(E).

On June 1, 2010, the state appellate court affirmed the judgment of the trial court.

Rosa did not file a timely notice of appeal of the state appellate court's decision. On October 15, 2010, Rosa filed in the Ohio Supreme Court a notice of appeal and a motion to file a delayed appeal. On December 1, 2010, The Ohio Supreme Court denied Rosa's motion and dismissed her appeal.

On April 29, 2011, Rosa filed in this court a petition for a federal writ of habeas corpus. Rosa asserts two grounds for relief in her petition:

GROUND ONE: The judge failed to review a juror's answers to voir question in its entirety and refused to dismiss merely because the juror was able to eventually state that she could be aside her bias.

GROUND TWO: The failure to object to improper testimony thus allowing the jury to consider unfairly prejudicial evidence deprived the petitioner her right to effective assistance of counsel.

Respondent filed a Return of Writ on August 26, 2011. Doc. No. 4. Thus, the petition is ready for decision.

II

*A. Jurisdiction*

The Court of Common Pleas of Cuyahoga County, Ohio sentenced Rosa. Rosa filed

4

her writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d). Cuyahoga County is within this court's geographic jurisdiction. This court has jurisdiction over Rosa' petition.

*B.     Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. Rosa's claims involve legal issues that can be independently resolved without additional factual inquiry.

*C.     Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional

context properly to exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted). Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits. 28 U.S.C. § 2254(b)(2).

Rosa has no state remedies available for his claims. Because no state remedies remain available to her, Rosa has exhausted state remedies.

*D.    Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to

6

respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted [her] federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Procedural default occurs when a petitioner fails to present fairly to the highest state court her claims in a federal constitutional context. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*, 459 U.S. 4 (1982). Moreover, a failure to present a claim to the highest court in the state deprives a federal court hearing a habeas petition of jurisdiction on that issue. *See McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

If the state argues that a petitioner has procedurally defaulted her claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). A default also will be excused if petitioner demonstrates that not excusing the default "will result in a fundamental

7

miscarriage of justice." *Coleman*, 501 U.S. at 750.

Respondent contends that Rosa has defaulted both of her grounds for relief. Rosa raised these grounds for relief in the state appellate court on direct appeal but failed to perfect a timely appeal to the Ohio Supreme Court. She then attempted to raise these claims in the Ohio Supreme Court by filing a motion for a delayed appeal pursuant to Ohio S. Ct. Prac. R. II, § 2(A)(4)(a).

Ohio S. Ct. Prac. R. II, § 2(A) ("R. II, § 2(A)") requires appellants to file in the Ohio Supreme Court a notice of appeal of a state appellate court judgment within 45 days of the entry of that judgment. This requirement is an adequate and independent state ground on which Ohio may rely to foreclose habeas relief. *Smith v. Ohio Dept. of Rehab. & Corr.*, 463 F.3d 426, 431-32, 432 n.3 (6th Cir. 2007). Raising a claim that should have been raised pursuant to R. II, § 2(A) by filing a motion for a delayed appeal pursuant to Ohio S. Ct. Prac. R. II, § 2(A)(4)(a) does not cure an appellant's procedural default. Appellants applying for delayed appeal to the Ohio Supreme Court and having received a denial of their application have procedurally defaulted their claims. *Bonilla v. Hurley*, 370 F.3d 494 (6th Cir. 2004); *see also Smith v. State of Ohio Dept. of Rehabilitation and Corrections*, 463 F.3d 426, 431-32, 432 n.3 (6th Cir. 2006) (holding that a dismissal a motion for delayed appeal is a dismissal on procedural grounds and is an adequate and independent ground upon which Ohio may rely to foreclose habeas review). Rosa has procedurally defaulted her grounds for relief.

Rosa does not demonstrate cause and prejudice for her default or demonstrate that enforcing the default would result in a manifest miscarriage of justice. Consequently, both of Rosa's grounds for relief should be dismissed as procedurally defaulted.

8

III.

For the reasons given above, both of Rosa's grounds for relief should be dismissed as procedurally defaulted, and Rosa's petition should be dismissed with prejudice.

Date: December 9, 2011            /s/ *Nancy A. Vecchiarelli*
                                                   United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**